UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LORRIE CASKEY, ROBERT JOLLY and MICHELLE STEWART,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHEM LIFE INSURANCE COMPANY, THE ANTHEM COMPANIES, INC., and ELEVANCE HEALTH, INC. (f.k.a ANTHEM INSURANCE COMPANY, INC. and WELLPOINT, INC.)<br><br>Defendants. | Case No.:2:23-cv-3033<br><br>Judge_____<br><br>Magistrate:_____ |

## COMPLAINT

COMES NOW the Plaintiffs, LORRIE CASKEY, ROBERT JOLLY and MICHELLE STEWART, by and through the undersigned attorney, for their Complaint against Defendants ELEVANCE HEALTH, INC. (f.k.a. ANTHEM INSURANCE COMPANY, INC. and "WELLPOINT, INC.") and ANTHEM LIFE INSURANCE COMPANY and alleges as follows:

### THE PARTIES

1. Plaintiff Lorrie Caskey ("Ms. Caskey") is a resident of Delaware County, Indiana and is the beneficiary of the Group Policy and Certificate of Coverage No. C00415.

1

2. Plaintiff Robert Jolly ("Mr. Jolly") is a resident of Delaware County, Indiana and is the beneficiary of Group Policy and Certificate of Coverage No. C00415

3. Plaintiff Michelle Stewart ("Ms. Stewart") is a resident of Delaware County, Indiana and is the beneficiary of Group Policy and Certificate of Coverage No. C00415

4. Defendant The Anthem Companies, Inc. is a foreign limited liability company with its principal place of business located at 220 Virginia Ave., Indianapolis, Indiana, 46204.

5. Elevance Health, Inc., formally known as Anthem Insurance Company, Inc. and Wellpoint, Inc.  (collectively referred to as "Anthem") is a foreign corporation with its principal place of business located at 220 Virginia Ave., Indianapolis, Indiana, 46204.  Anthem was formally known as Wellpoint, Inc.

6. Anthem Life Insurance Company ("Anthem Life") is a foreign corporation with its principal place of business located at 220 Virginia Ave., Indianapolis, Indiana, 46204 and a main administrative office located in Columbus Ohio.

7. Defendants are all subsidiaries of Anthem, Inc.

8. Anthem operates office locations in multiple states around the country, including an office based in Cincinnati, Ohio.

## JURISDICTION AND VENUE

9. This is an action for relief under the Employee Retirement Income Security Act ("ERISA"),  as amended, 29 U.S.C. §§1001, et. Seq. Pursuant to Section 29 U.S.C. §1132(e) and 28 U.S.C. § 1331 this Court has original subject matter jurisdiction because this Complaint arises

under ERISA. Specifically, Plaintiffs bring this action to enforce their rights under ERISA as authorized by 20 U.S.C. §1132(a)(1)(B) and §1132(a)(3).

10. ERISA provides for nationwide service of process, 29 U.S.C. §1132(e)(2).

11. This Court has venue pursuant to 29 U.S.C. §1132(e)(2). In particular, in ERISA actions, venue is proper where a defendant resides or may be found.

12. Here, Anthem Life can be found in the county of Franklin, state of Ohio.

13. Anthem can also be found in the county of Hamilton. It is an authorized insurer in the state of Ohio and has agents in Hamilton County, Ohio.

## FACTUAL ALLEGATIONS

### The Group Policy & The Certificate

14. On January 1, 2006, Anthem Life issued Group Policy No. C00415 ("Group Policy") providing group term life insurance to Anthem participants which the Group Policy referred to as "Associates."  A copy of the Group Policy is incorporated herein as **Exhibit A**.

15. Anthem Life is the claims administrator of the Group Policy responsible for paying benefits subject to its terms and conditions.

16. According to the Group Policy,  Anthem is the named Policyholder, and the Group Policy is the agreement between Anthem Life and Anthem.

17. The Group Policy states that Anthem's premium contribution for Group Term Life is "*100% of the cost of a benefit of either 1 X Associate's Annual Earnings or $50,000.*"

18. On January 1, 2020, Anthem Life issued a Certificate of Coverage ("Certificate") according to the terms of the Group Policy but is not a part of the Group Policy. A copy of the Certificate is incorporated herein as **Exhibit B**.

19. The Certificate describes the insurance provided to eligible employees or "Certificateholders."

20. The Certificate states that Anthem is the Plan Sponsor, policyholder who is responsible for paying the premium for the insurance but may require the Certificateholder to pay for their coverage.

21. According to the Certificate, group coverage ends on the earliest of

- *the day before the monthly premium due date on which:*
  *- the Certificateholder no longer meets the definition of an Eligible Person (for example, the Eligible Person ends employment or is no longer in an eligible class); or*
  *-the Certificateholder fails to pay any premium contribution due.*

22. The Certificate provides that a Certificateholder's coverage may be continued

*beyond the date it would otherwise end up to the time period(s) shown below[:]…*

- *If the Certificateholder is no longer Actively-at-Work due to a leave of absence, Group Life Insurance and Accidental Death and Dismemberment Insurance may be continued as long as the leave is authorized by the Group for up to 12 months.*
- *If the Certificateholder is no longer Actively-at-Work due to disability, Group Life and Accidental Death and Dismemberment Insurance may be continued for up to 6 consecutive months.*

23. The Certificate provides that a Certificateholder has a right to convert her life insurance to an individual policy if her life insurance ended for a reason other than the Group Policy ending or changing or the Group's coverage under the Group Policy ending or changing.

24. The Certificate provides that a Certificateholder has a right to convert her life insurance coverage to an individual policy within a time specified under the terms of the Certificate.

25. The Certificate provides that a Certificateholder's right to convert her coverage is subject to the condition that she receive notice from Defendants of her right to convert.

26. The Certificate further provides that if Defendants fail to give a Certificateholder notice of the right to convert, the Certificateholder's right to convert would be extended under the terms of the Certificate to a date certain.

27. The Certificate provides that if a Certificateholder dies during the 31-day conversion period, then the Certificateholder's beneficiaries would be entitled to the proceeds of the Certificate just as if the Certificateholder had been given notice of her right to convert and had exercised that right.

**Employment, Enrollment and Participation in the Anthem Group Policy & Certificate**

28. At all times relevant, Plaintiffs Lorrie Caskey's and Michelle Stewart's mother and Plaintiff Robert Jolly's spouse, Margie Rickner ("Margie" or the "Insured") was employed by Anthem.

29. Margie began full-time employment with Anthem on March 30, 2009.

30. As a full-time Anthem employee, Margie was afforded the opportunity to participate in Anthem's plans, funds, programs, or arrangements, including short term disability, long term disability and life insurance.

31. During open enrollment in 2009, and at all relevant times thereafter, upon information and belief, Margie elected to enroll in life insurance, short- and long-term disability coverages.

32. Margie named Plaintiffs Lorrie Caskey, Michelle Stewart, and Robert Jolly (collectively referred to as "Plaintiffs") as beneficiaries under the Group Policy and Certificate.

**Margie's Illness, Leave of Absence and Continued Premium Contributions**

33. In or about the end of 2020, Margie, at age 63, was diagnosed with cancer.

34. In or about January 2021, Margie was further diagnosed with leukemia.

35. On March 10, 2021, while battling leukemia and undergoing chemotherapy treatments, Margie went on short-term disability.

36. Following her short-term disability, Margie returned to work in or about September 13, 2021.

37. On or about September 17, 2021, Margie was feeling too sick to work and requested Anthem place her on a continuous leave accommodation.

38. Anthem, via its HR Solutions Center and Leave of Absence Department, approved Margie's accommodation leave of absence beginning on September 28, 2021, through November 29, 2021, and up until and following her death.

39. During her approved leave of absence, Margie also went on long-term disability.

40. In or about November 15, 2021, Margie received a letter from Anthem asking if she wanted her insurance premiums billed to her or have them directly come out of her LTD check.

6

41. In response to Anthem's November 15, 2021, letter, Margie indicated that she wanted her insurance premiums to come directly out of her LTD check.

42. On December 8, 2021, Margie emailed Anthem's HR Solutions Center and stated she wanted to keep her insurance active by paying the arrears in payments upon her return to work. In the same email, Margie stated that she was receiving letters saying she must call Anthem about keeping her benefits and asked Anthem's HR Solutions Center to advise her about what more she needed to do to keep her benefits active.

43. On December 9, 2021, Margie called Anthem asking for a call back and an email to set up a benefit arrears payment plan.

44. On December 13, 2023 "Nicholas" from Anthem's HR Service Center responded to her email and phone message stating that once Margie returns to work, premium arrearages would be deducted from her first paycheck(s), and asked Margie when she expected to return to work.

45. Anthem exercised its discretion and elected to continue Margie's life insurance coverage and premium contributions as well as flex credit insurance contributions were provided during her leave of absence from September 28, 2021, up to and following her death her death.

46. Margie died on March 16, 2022, during the 12-month leave of absence continuation of coverage period.

**Plaintiffs' Claim for Benefits Following Margie's Death**

47. Following Margie's death, Plaintiffs timely filed claims for both the life benefits under the Group Policy and Certificate.

7

48. Anthem Life denied Plaintiffs' claim.

49. Plaintiffs' timely appealed Anthem Life's determination.

50. Anthem Life denied Plaintiff's appeal stating that no coverage was in effect at the time of Margie's death and Margie failed to exercise her right to convert the policy within 91 days after her coverage ended on September 28, 2021.

51. Anthem Life in its appeal decision letter further stated that the leave of absence 12-month continuation of coverage section did not apply because the essence of her leave of absence was due to her disability which commenced on March 10, 2021, and therefore her coverage could only be continued for 6 months. The appeal decision letter states:

> *Although [Margie] was approved for leave of absence, the essence of her absence was due to her disability which commenced March 10, 2021. Eligibility for plan benefits is not governed or impacted solely by the approval of leave of absence while disabled, by the mere continuation of employer-based contribution towards the employee life insurance coverage or by the fact that the employee's job position and employment were maintained during the period in question.*
>
> *In summary, based on the evidence and information available, it is determined that Ms. Rickner's GTLIF coverage ended prior to her date of death and she did not submit an application to convert her group life insurance to an individual policy. As of her death, she no longer met all stipulations governing eligibility for the GTLIF benefits initially elected. It is the conclusion of this appeal review that the November 18, 2022 denial of GTLIF benefits was factually and contractually appropriate and, therefore, the prior decision has been upheld. No benefits remain warranted at this time.*

A copy of the appeal decision letter is incorporated herein as **Exhibit C**.

52. Plaintiffs have exhausted the administrative remedies available to them under the Group Policy and Certificate, and/or exhaustion has been excused or is waived.

53. As of the date of this Complaint, Anthem Life has failed to pay Plaintiffs sums due pursuant to the terms of the Plan.

## COUNT I – For Benefits Against Anthem Life

### 29 U.S.C. § 1132(a)(1)(B)

54. Plaintiffs incorporates all of the allegations contained in all of the paragraphs above, and further states:

55. Plaintiffs bring this claim against Anthem Life under 29 U.S.C. §1132(a)(1)(B) and seek an award of life insurance benefits.

56. Under the terms of the Group Policy and Certificate, Margie was insured by the Group Policy and Certificate at the time of her death and her beneficiaries, Plaintiffs, are entitled to the proceeds of the life insurance benefit available under the terms of the Group Policy and Certificate.

57. Anthem Life's denial of Plaintiffs' claim was incorrect, wrong, and unreasonable because it failed to consider Plaintiffs' evidence and it misapplied the clear and unambiguous terms of the Group Policy and Certificate.

58. As a result of the denial of their claim, Plaintiffs have suffered damage, *inter alia*, in the form of unpaid life insurance benefits.

## Count II- For Breach of Fiduciary Duty Against Anthem & Anthem Life

### 29 U.S.C. §1132(a)

59. Plaintiffs incorporate all of the allegations contained in all of the paragraphs above, and further states:

60. Plaintiffs bring this claim against Anthem and Anthem Life under 29 U.S.C. §1132(a) and seek equitable relief.

61. At all times relevant Anthem was an ERISA fiduciary and owed Margie and her beneficiaries all of the duties prescribed under ERISA, including without limitation those set forth in 29 U.S.C. §1104(a).

62. At all times relevant Anthem Life was an ERISA fiduciary and owed Margie and her beneficiaries all of the duties prescribed under ERISA, including without limitation those set forth in 29 U.S.C. §1104(a).

63. Under the terms of the Group Policy and Certificate, Anthem had certain fiduciary duties, including the duty to inform Margie of her right to convert his life insurance coverage and to permit her to do so.

64. The above duties were further heightened given the fact that Anthem was aware that its long-time employee Margie Rickner was battling cancer and had asked Anthem shortly before Anthem Life contends that her right to convert her policy ended what she needed to do to keep her benefits active.

65. At no point did Anthem advise Margie that her coverage had ended on September 28, 2021, and that her right to convert her coverage would terminate on December 27, 2021. Instead, Anthem mislead Margie into believing that her benefits were active and would remain active either by deducting premiums from her LTD payments or by making them up once she returned to work.

66. At no time did Anthem provide notice to Margie as to when her right to convert her policy would begin.

67. Anthem breached its obligations to Margie and in turn to Plaintiffs by failing to notify Margie of her right to convert life insurance coverage, including when she needed to exercise her right, thereby effectively precluding her from so doing.

68. As a direct result of Anthem's breach of fiduciary duty, Plaintiffs have been denied the full value of the Group Policy and Certificate insurance proceeds and have been damaged in the amount of unpaid life insurance proceeds plus interest, the actual amount which will be proved at trial.

69. Anthem Life breached its fiduciary duty owed to Margie by continuing to accept premium contributions from Anthem which further mislead Margie into believing her coverage remained active, even though the coverage had allegedly ended according to Anthem Life nearly 6 months prior to Margie's death.

70. Plaintiffs are entitled to equitable relief to remedy these breaches of fiduciary duty including, but not limited to, the equitable remedies of estoppel and surcharge.

WHEREFORE, Plaintiffs prays for relief against Defendants as follows:

A. A determination that Plaintiffs are entitled to life insurance benefits under the terms of the Group Policy and Certificate;

B. An award of life insurance benefits;

C. In the alternative, such equitable relief as the Court deems appropriate under the circumstances, including but not limited to the equitable remedies of estoppel and surcharge;

D. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

E. For payment of pre-judgement and post-judgement interest as allowed for under ERISA;

F. For such other and further relief as this Court deems just and proper.

Respectfully Submitted,

MORGAN & MORGAN, P.A.

*/s/ Jesse Shore*
Jesse Shore (91730)
jshore@forthepeople.com
MORGAN & MORGAN
300 Madison Avenue, Suite 200
Lexington, KY 41011
Telephone: (859)899-8786
Facsimile: (859)899-8807

*Attorney for Plaintiff*